UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEPHEN ARTHUR TRASK,

        Plaintiff,

v.                               Case No.  8: 20-cv-352-T-24SPF

ANDREW M. SAUL,
Acting Commissioner of the
Social Security Administration,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

    Plaintiff seeks judicial review of the denial of his claim for Supplemental Security Income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, it is recommended that the Commissioner's decision be affirmed.

### I.

**A.    Procedural Background**

    Plaintiff filed an application for SSI (Tr. 137-142).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 51-71).  Plaintiff then requested an administrative hearing (Tr. 80).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 34-45).  Following the hearing, the

ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 19-27).   Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-3; 135).   Plaintiff then timely filed a complaint with this Court (Doc. 1).   The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1960, claimed disability beginning August 15, 2010 (Tr. 150).  Plaintiff obtained a high school education.   He attended five different colleges over the course of eight years before dropping out due to failing grades (Tr. 236).   Plaintiff does not have any past relevant work experience, although he worked for a brokerage firm after college, and as a janitor at a hospital from January-August 2010 but was fired due to unsatisfactory work performance (Tr. 151; 236).   Plaintiff alleged disability due to Attention Deficit Disorder (ADD) and anxiety (Tr. 150).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since October 13, 2015, the date Plaintiff filed his application for SSI (Tr. 21).   After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: schizotypal disorder, generalized anxiety disorder, dependent personality disorder, and attention deficit disorder (Tr. 22).   Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22).   The ALJ then concluded that Plaintiff retained a residual functional capacity

("RFC") to perform medium work except he could not climb ladders, ropes, or scaffolds, can tolerate only occasional contact with the public and workers, and is limited to non-production jobs (simple one-to-two-step tasks that are not in a team environment) (Tr. 23). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 23).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined transferability of job skills was not an issue because Plaintiff does not have any past relevant work (Tr. 26).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a hospital cleaner, laboratory equipment cleaner, marker, photocopy machine operator, and housekeeper (Tr. 26-27). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 27).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an impairment

that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

4

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.

Plaintiff challenges the ALJ's decision on three grounds. First, Plaintiff claims the ALJ erred by failing to properly consider his mental limitations in the area of "adapting and managing himself." Specifically, Plaintiff claims the ALJ erred at step two by failing to use the "special technique" dictated by the Psychiatric Review Technique Form ("PRTF") and at steps four and five when the ALJ failed to include these limitations in the RFC and in the hypothetical to the vocational expert ("VE"). Second, Plaintiff asserts

the ALJ erred in failing to consider his dependent personality disorder.  Third, Plaintiff maintains that remand is needed because the ALJ erred at step five by failing to identify and resolve an apparent inconsistency between the VE's testimony and the DOT.  For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

### A. Mental impairments

The Court finds that the ALJ properly considered Plaintiff's mental impairments.  As discussed below, the ALJ utilized the "special technique" dictated by the PRTF with regard to Plaintiff's limitations in the area of "adapting and managing oneself."  The ALJ then properly addressed Plaintiff's limitations that he found supported by substantial evidence into the RFC and the VE hypothetical.

### 1. Psychiatric Review Technique Form (PRTF)

Where a claimant has a "colorable claim of mental impairment," the ALJ must "complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions." *Moore v. Barnhart*, 405 F.3d 1213, 1214 (11th Cir. 2005).  Essentially, the PRTF requires the ALJ to assess how a claimant's mental impairments impact four broad categories: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."  20 C.F.R. § 404.1520a(c)(3).   A five-point scale is used to rate the degree of limitation: "None, mild, moderate, marked, and extreme.  The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity."   20 C.F.R. § 404.1520a(c)(4).  The Social Security regulations simply require the ALJ to use the

"special technique" dictated by the PTRF for evaluating mental impairments" and "incorporate the results of this technique into the findings and conclusions." *Moore v. Barnhart*, 405 F.2d 1208, 1213-14 (11th Cir. 2005).  In this case, the ALJ incorporated the results of the PRTF into his "Findings of Fact and Conclusions of Law" (Tr. 21-25).

In the "Findings of Fact and Conclusions of Law" section, the ALJ considered Plaintiff's mental impairments, singly and in combination, and opined that Plaintiff did not meet or medically equal the criteria of any of the listed impairments (Tr. 22).  In considering the "paragraph B" criteria, the ALJ found Plaintiff had "a moderate limitation in understanding, remembering or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and, a moderate limitation in adapting or managing oneself" (Tr. 22).[1]  Because the ALJ found that Plaintiff's mental impairments did not cause at least two marked limitations or one extreme limitation, he concluded that the "paragraph B" criteria were not satisfied (Tr. 22).  The ALJ stated that his RFC assessment "reflects the degree of limitation [he] found in the 'paragraph B' mental functional analysis" (Tr. 22).  Review of the ALJ's "Findings of Fact and Conclusions of Law" in its entirety shows that the ALJ properly engaged in the analysis required by the PRTF and the Social Security regulations. Against this backdrop, the undersigned concludes that the ALJ properly addressed Plaintiff's limitations in the area of "adapting and managing oneself" in accordance with the PRTF.  *See e.g. Bianco v. Comm'r of Soc. Sec.*, case no. 2:18-cv-570-FtM-NPM, 2019 WL

---

[1] Plaintiff's argument concerns only his limitations in the area of "adapting and managing oneself."  *See* Doc. 15, pp. 9-15.

4727812, * 5 (M. D. Fla. Sept. 27, 2019) (district court found that ALJ properly incorporated PRTF analysis in his decision and that decision was supported by substantial evidence even though ALJ did not specifically reference PRTF as he rated Plaintiff's limitations in all areas, discussed medical evidence that addressed these areas, and considered the psychological consultant's findings); *Taviere v. Comm'r of Soc. Sec.*, case no. 8:18-cv-1182-T-JSS, 2019 WL 4164961 (M.D. Fla. Sept. 3, 2019) (ALJ incorporated "special technique" by explaining in her findings and conclusions the evidence of record supporting her finding that plaintiff had only mild limitations in all four functional areas).

## 2. Residual Functional Capacity

Plaintiff also contends that the ALJ failed to incorporate his PRTF findings, namely his limitations in "adapting or managing oneself," into his RFC and hypothetical to the VE.  Citing *Winschel v. Commissioner*, Plaintiff claims the ALJ was required to either indicate that the medical evidence suggested Plaintiff's ability to work was unaffected by his limitation, or to explicitly incorporate the limitation in the hypothetical to the VE. *Winschel*, 621 F.3d 2176, 1180 (11th Cir. 2011).  Plaintiff maintains that the evidentiary record supports limitations regarding adapting or managing himself, specifically an inability to make decisions and set realistic goals, and an inability to maintain personal hygiene and attire appropriate for a work setting.  The Commissioner, in contrast, asserts that the ALJ, vested with the final responsibility for assessing a claimant's RFC, properly considered the evidence as a whole before concluding Plaintiff is capable of performing medium work with certain restrictions that accounted for his limitations.   Upon

consideration, the undersigned agrees that substantial evidence supports the ALJ's RFC assessment.

The RFC is defined as the most a claimant can do despite his limitations. 20 C.F.R. §416.945(a)(1). To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §416.945(a)(1), (3). Per SSR 96-8p:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his … work-related abilities on a function-by-function basis including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 416.945. … The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). In this case, the ALJ found that Plaintiff has the RFC to "perform medium work as defined in 20 CFR 416.967(c), except he … is [ ] limited to non-production jobs (simple, one-to two-step tasks that are not in a team environment)" (Tr. 23).

In assessing Plaintiff's RFC, the ALJ initially noted that the burden rests with the claimant to provide medical or other evidence regarding his medical impairments, and that Plaintiff failed to provide any medical evidence pertaining to the time period from his Title XVI application (October 13, 2015) through February 14, 2017 (Tr. 24). The medical evidence consists only of treatment records from Suncoast Community Mental Health Center dated February 14, 2017 through September 19, 2018 (Tr. 238-331) and a consultative psychological exam on January 22, 2016 (Tr. 233-237). Summarizing the

evidence of record, the ALJ discussed Plaintiff's difficulty making decisions and setting goals, poor hygiene and self-care, and anxiety (Tr. 24-25). The ALJ concluded that "the overarching picture" is that Plaintiff has only "moderate limitations with corresponding workplace functional limitations" (R. 25). As set forth more specifically below, by limiting Plaintiff to non-production work involving no team environment, the ALJ adequately addressed Plaintiff's moderate limitations in adapting or managing oneself. *See* doc. 16, p. 18; 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.00E(4) (explaining an aspect of adapting or managing oneself includes "making plans for yourself independently of others").

   To the extent that Plaintiff claims the ALJ failed to include limitations identified by State Agency psychological consultant David Tessler, Psy. D. at the administrative reconsideration level (Tr. 61-71), the undersigned finds no error. To begin, an ALJ's RFC assessment need not be identical to a particular assessment of record or incorporate precise limitations set forth by a physician. *See* 20 C.F.R. § 416.945(a)(3) (stating that all of the record evidence is considered in the RFC assessment). Tessler opined that Plaintiff was "moderately limited" in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. However, Tessler also observed that Plaintiff "appears intelligent and he retains an adequate capacity for understanding and memory;" Plaintiff's "ADHD and anxiety symptoms may cause occasional lapses in concentration and efficiency, but he appears to meet the mental demands of well-structured task activity;" "social interaction is largely appropriate with no serious deficits or limitations;" and "adaptive skills are adequately developed and

preserved. May need support with suitable goal setting" (Tr. 69).  In assessing Plaintiff's RFC, the ALJ discussed Tessler's opinions noting that "the overarching picture herein is that the claimant is an individual faced with moderate limitations, with corresponding workplace functional limitations" (Tr. 25).

Similarly, to the extent that Plaintiff asserts the ALJ's RFC overlooked opinions from Billie Jo Hatton, Ph.D. and Suncoast Center for Community Mental Health, the undersigned finds no error. In assessing Plaintiff's RFC, the ALJ adequately considered Hatton's January 2016 psychological consultative examination and the medical evidence from Suncoast where Plaintiff sought mental health treatment from 2017-2018.  Review of Hatton's report shows Hatton described Plaintiff's grooming as "somewhat in disarray" and noted his "somewhat tangential" thoughts and his "somewhat anxious" demeanor with no evidence of depression (R. 24).   The ALJ noted that Hatton's exam showed "an air of ineffectiveness about [the claimant]" suggesting "some limitations though not necessarily any marked or extreme limitations" (Tr. 24, 234-237).   In discussing the limitations suggested in 2017-18 by Suncoast providers, the ALJ noted the records showed "routine indications of a disheveled appearance, 'grandiose thinking,' and other 'bizarre' forms of behavior," yet also showed that Plaintiff routinely exhibited good eye contact, was alert and oriented to person, place, time, and situation and showed clear articulation skills (Tr. 24). Weighing the Suncoast records as a whole, the ALJ found that the evidence "perhaps support[s] a finding of limitations, [but] again fails to rise to a level of marked or extreme limitations" (R. 24).

In assessing Plaintiff's RFC, the ALJ addressed an unusual statement by a Suncoast therapist Tamara Honickman who advised Plaintiff that "he should not work or try to work because that will hinder his chances of getting disability" (Tr. 24, 317).   The ALJ addressed another peculiarity in the Suncoast records too:  a December 2018 letter To Whom it May Concern from Jessica Futoran, L.M.H.C. that stated Plaintiff has a diagnosis of schizotypal disorder and explained in general terms the symptoms and features of this disorder (Tr. 24; 342).   The ALJ explained the letter failed to address whether Plaintiff "carried these struggles" (Tr. 25).   In light of these observations, the ALJ assigned "little weight" to Honickman and Futoran's statements (Tr. 24-25).   Review of the record shows substantial support for the ALJ's decision to accord little weight to Honickman and Futoran's statements and for the ALJ's conclusion that neither Tessler's, nor Hatton's, nor Suncoast's records establish that Plaintiff's limitations were marked or extreme.

Intertwined with his assertion that the ALJ erred in assessing his RFC, Plaintiff asserts that the ALJ improperly ignored the statement of his sister, Diane Stegman, pertaining to his inability to maintain proper hygiene and self-care. I find no error in this regard.   The ALJ discussed Stegman's third party report, finding it unsupported by the "evidence that … shows that the mental status examination signs/ findings on examination have generally proven modest" (Tr. 25).   As the Commissioner indicates, only the opinions of acceptable medical sources are entitled to controlling weight.   *See* SSR 06-03p.   While a particular Suncoast progress note from March 7, 2017 discussed Plaintiff's lack of hygiene and unwashed hair (Tr. 270), other evidence described Plaintiff's

hygiene as "adequate" (Tr. 236 (Hatton)) and described Plaintiff as "well dressed and groomed" (Tr. 242, Suncoast ARNP Adams; Tr. 292, Suncoast ARNP Adams; Tr. 276). Notably, at his initial intake appointment at Suncoast, Plaintiff's physical appearance was described as "average" and the record from that date indicated he reported having trouble in the past with personal hygiene but now tends to his hygiene to make sure he stays healthy (Tr. 245). As the Commissioner indicates, there is no evidence that Plaintiff's arguable lack of hygiene results in any mental limitations not addressed in the RFC. *See e.g. Moore v. Barnhart,* 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (mere existence of an impairment does not reveal extent to which it limits claimant's ability to work); *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) (disability is determined by effect of impairment on claimant's ability to work, rather than the diagnosis of an impairment itself).

Plaintiff maintains the ALJ erred by failing to include the limitations in adapting and managing himself into the hypothetical to the VE. When posing a hypothetical to the VE, the ALJ must take into account all the claimant's impairments. *Wind v. Barnhart,* 133 Fed. Appx. 684 (11th Cir. 2005); *Pendley v. Heckler,* 767 F.2d 1561 (11th Cir. 1985) (ALJ's hypothetical must comprehensively describe the plaintiff's limitations). *Id.* at 1563. Of course, the ALJ is not required to include limitations found not credible, and submits to the VE only those limitations supported by objective evidence of record. *Crawford v. Comm'r of Social Security,* 363 F.3d 1155, 1160-61 (11th Cir. 2004) (ALJ need not include findings in hypothetical that ALJ rejected as unsupported). Here, the ALJ included those limitations he found credible and supported by the record evidence. Furthermore, as the

Commissioner points out, Plaintiff has failed to show that his impairments resulted in any mental limitations in excess of those the ALJ included in his RFC.  *See Moore*, 405 F.3d at 1213 ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from "re-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner] ... even if the evidence preponderates against" the decision.") (citing *Bloodworth*, 703 F.2d at 1229).  Accordingly, I find the ALJ's hypothetical complete and his reliance upon the VE's testimony in response to his questions proper.

In sum, the ALJ's decision reflects that the ALJ properly considered Plaintiff's mental impairments.  At step two, the ALJ utilized the "special technique" dictated by the PRTF with regard to his limitations in the area of "adapting and managing oneself." At steps four and five the ALJ properly addressed Plaintiff's limitations that he found supported by the evidence into the RFC and the VE hypothetical. The undersigned finds substantial evidence supports the ALJ's decision with regard to these issues.

### B.  Personality Disorder

Plaintiff's second issue is similar to the first one.  He argues the ALJ's RFC should have included limitations related to his step two finding that Plaintiff's dependent personality disorder is a serious impairment.  Plaintiff asserts that a serious impairment is, by definition, one that significantly limits an individual's basic work activities.  *See* 20 C.F.R. §416.920(c).  However, he does not identify any particular limitation(s) imposed by treating providers inconsistent with the RFC.  Rather, he simply maintains that his

dependent personality disorder affects his ability to make decisions, and suggests the ALJ erred by failing to include this limitation in the hypothetical to the VE and in the RFC assessment.

While treatment notes indicate Plaintiff had difficulty making decisions, the undersigned finds that the limitations the ALJ included in the RFC address this concern. As already discussed in section A above, the ALJ's RFC assessment limits Plaintiff to occasional contact with the public and coworkers, and limits him to non-production jobs involving simple, one-to-two step tasks and no team environment (Tr. 23, Finding 4). In arriving at the RFC, the ALJ discussed Plaintiff's limited treatment history, Plaintiff's mild to moderate findings on examination, and the medical source opinions (Tr. 23-25). Moreover, a diagnosis of mental impairments without more is insufficient to establish that a condition causes functional limitations. *Moore, supra*, 405 F.3d 1208, 1213 n.6. Hence, the ALJ did not err in failing to include additional limitations in the RFC related to Plaintiff's dependent personality disorder.

## C. Step Five

Lastly, Plaintiff asserts the ALJ erred at step five by failing to identify and resolve an apparent inconsistency between the VE testimony and the DOT. In this circuit, the ALJ has an affirmative duty to identify and resolve any apparent conflicts between a VE's testimony and the DOT job requirements, pursuant to SSR 00-4p. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353 (11th Cir. 2018). "An 'apparent conflict' is more than just a conflict that is made apparent by the express testimony of the VE. It is a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony. At

a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.* at 1365.

The ALJ, based on the testimony of the VE, found Plaintiff capable of performing work in the national economy including the jobs of Hospital Cleaner, Laboratory Equipment Cleaner, Marker, Photocopy Machine Operator, and Housekeeper/ Cleaner (Tr. 26-27).   Plaintiff argues that there was an apparent conflict between the VE's testimony that he can perform the jobs of Hospital Cleaner, Laboratory Equipment Cleaner, Marker, and Photocopy Machine Operator (Tr. 26-27) and the DOT's job descriptions that indicate these four jobs require a reasoning level of two.

The Commissioner asserts that while it is possible that an apparent inconsistency existed between the VE's testimony and the DOT's reasoning level for these jobs, the Court need not reach this issue because the ALJ identified a fifth job that only requires a reasoning level of one.[2]   Upon consideration, the Court agrees, especially in light of Plaintiff's acknowledgment that the fifth job identified by the VE, housekeeper/cleaner, has a DOT reasoning level of one, a level consistent with the RFC limitation to simple, one-to-two step tasks.[3]  *See Wooten v. Comm'r of Soc. Sec.,* 787 F.App'x. 671, 674 (11th Cir.

---

[2]   The DOT defines reasoning level of one as follows: "Apply commonsense understanding to carry out simple one-or-two step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."  DOT, App. C-Components of the Definition Trailer (4th ed., rev. 1991), 1991 WL 688702.

[3] Other courts have found this job consistent with "simple work." *See Zeh, supra* (position of housekeeper-cleaner within scope of restriction to simple, routine, repetitive tasks in low stress environment); *Estate of White v. Saul*, case no. 19-CV-61745, 2020 WL 5351064

2019) (finding that even if ALJ erred in concluding that Wooten could perform jobs with reasoning level three error would be harmless since VE also identified a job with a reasoning level of one that plaintiff did not allege was inconsistent with her RFC); *Peterson v. Comm'r of Soc. Sec.*, case no. 2:19-cv-566-FtM-29NPM, 2020 WL 6708022 (M.D. Fla. Nov. 16, 2020) (finding ALJ's failure to resolve apparent conflict between VE testimony and DOT harmless where VE identified other jobs that existed in significant numbers in national economy that plaintiff could perform); *Zeh v. Saul*, case no. 8:18-cv-1608-T-SPF, 2019 WL 4233765, *3 (M.D. Fla. Sept. 6, 2019) (affirming ALJ's decision where VE's testimony included one position plaintiff could perform and finding any error in listing other positions harmless) (citing *Zirnsak v. Colvin*, 777 F.3d 607, 618 (3d Cir. 2014) (holding that failure to inquire about or reconcile an apparent conflict does not warrant remand when no harm was done to claimant). *See also Caldwell v. Barnhart*, 261 F. App'x. 188, 190 (11th Cir. 2008) ("When … an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

Notwithstanding the fact that the housekeeper/ cleaner job is consistent with "simple, one-to-two step tasks," Plaintiff asserts the job is problematic for other reasons. Specifically, he asserts the housekeeper/ cleaner job requires "rendering assistance to

---

(S.D. Fla. Aug. 26, 2020) (citing *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 873 (11th Cir. 2016) (job of housekeeping cleaner with level 1 reasoning consistent with limitation to "simple work").

patrons," a function he is "unlikely" able to perform due to his adaptability limitations and hygiene problems (Doc. 16, p.28).   While some record evidence shows Plaintiff sometimes had hygiene-related problems, the ALJ did not include any hygiene-related limitations in the RFC.   Similarly, Plaintiff's vague argument that his "adaptability limitations" may preclude him from "rendering assistance to patrons" fails as he has failed to show that the DOT's housekeeper/cleaner job requirements exceed the limitations in his RFC.   *See* DOT, §323.687-014, 1991 WL 672783 (housekeeper/cleaner).   Plaintiff has not cited to any authority supporting these arguments, and the Court is not persuaded by them.   *See Zeh, supra* (finding plaintiff's assertion that she could not perform the job of housekeeper-cleaner because its duties may not be simple, routine or repetitive in nature no more than an "unadorned argument") (citing *Outlaw v. Barnhart,* 197 F. App'x. 825, 828 n.3 (11th Cir. 2006)); *N.L.R.B. v. McLain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citations to authority are generally deemed to be waived.")).

Plaintiff also asserts the ALJ erred by failing to include a limitation to medium work in the VE hypothetical.   The ALJ must pose an accurate hypothetical that takes into account all the claimant's impairments.   *Pendley v. Heckler,* 767 F.2d 1561, 1562 (11th Cir. 1985).   However, when the ALJ fails to include a limitation in the VE hypothetical such an error is harmless where the omission would not change the VE testimony.   *See Williams v. Barnhart*, 140 F. App'x 932, 936 (11th Cir. 2005) (ALJ failure to include plaintiff's "marginal" education and low I.Q. in hypothetical to VE were harmless errors where all jobs identified by VE were unskilled jobs that plaintiff could perform).   "The burden of

showing that an error is harmful normally falls on the party attacking the agency's determination." *See Barnes v. Saul*, case no. 8:190-cv-752-T-TGW, 2020 WL 4283236 (M.D. Fla. July 24, 2020) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). In *Barnes*, the court found that the ALJ's failure to include environmental limitations in the VE hypothetical was a harmless error where the VE identified jobs that did not require exposure to environmental conditions. *Id.* at *3. The *Barnes* court reasoned that the plaintiff failed to offer any evidence that he could not perform the jobs identified by the VE and adopted by the ALJ, and as such had failed to establish his burden of inability to perform the identified jobs. *Id.* at *4 (citing *Williams v. Barnhart*, *supra*, 140 F.App'x at 937). Similarly, in this case, the VE opined that Plaintiff can perform the job of housekeeper/cleaner, a job the DOT classifies as light work. DICOT 323.687-014 (G.P.O.) (4th ed., rev. 1991), 1991 WL 672783. *See also* 20 C.F.R. § 416.966(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) which you are able to meet with your physical or mental abilities and vocational qualifications."). Like Barnes, Plaintiff here has failed to show that he is unable to perform the housekeeper/cleaner job, a job that is consistent with the ALJ's RFC. Thus, the error is considered harmless. *See e.g. Lewis v. Comm'r of Soc. Sec.*, case no. 6:17-cv-356-Orl-37DCI, 2017 WL 8809369 (M.D. Fla. 2017) (finding that although ALJ erred by posing hypothetical to VE that inconsistent with ALJ's RFC determination such error was harmless because VE testified plaintiff could perform past relevant work that DOT defined as medium work, an exertional level that ALJ had found plaintiff could perform).

Finally, Plaintiff questions the VE's testimony that there are 130,000 housekeeper/cleaner jobs in the national economy (Tr. 42). Specifically, Plaintiff questions whether the 130,000 jobs should be reduced since the VE "provided the 130,000 figure based on no exertional limitation in the hypothetical question [and] did not adjust the number to eliminate any jobs which are higher than medium in exertion because the ALJ never included the limitation to medium work in the hypothetical question to the VE" (Doc. 16, pp. 27-28). This argument is unavailing given the fact that the DOT defines the housekeeper/cleaner job as light work. As the Commissioner indicates, the 130,000 housekeeper/ cleaner jobs in the national economy constitutes a significant number of jobs.[4] Moreover, the Court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1529 (11th Cir. 1990) ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."). Substantial evidence supports the ALJ's decision.

**IV**.

Accordingly, for the foregoing reasons, it is hereby

RECOMMENDED:

---

[4] Notably, the Eleventh Circuit has "never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant number' under the statute and regulations." *Atha v. Comm'r of Soc. Sec.*, 616 F. App'x 931 (11th Cir. 2015) (finding 23,800 jobs in national economy constituted a "significant number") (quoting *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987)). As the *Atha* court held, although the ALJ bears the burden to identify jobs in the national economy that a plaintiff can perform, "the ALJ need not identify a certain number of jobs for its decision to be supported by substantial evidence." *Id*.

1.  The decision of the Commissioner be affirmed.

2.  The Clerk be directed to enter final judgment in favor of the Commissioner and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 21st day of January, 2021.


SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE


**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  See 11th Cir. R. 3-1.


cc:     Hon. Susan C. Bucklew
        Counsel of Record